UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GADDY, | No.  2:16-cv-2269 TLN AC P |
| plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| E. MOGHADDAM, et al. | |
| defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Before this court are plaintiff's requests for ruling (ECF Nos. 83-85, 88, 90-93) and defendants' motion for summary judgment (ECF No. 75 et seq.).  For the reasons stated below, plaintiff's requests for ruling will be denied as moot.  It will also be recommended that defendants' motion for summary judgment be granted and that this action be dismissed.

I.    REQUESTS FOR RULING

Plaintiff has filed several motions requesting that the court issue a ruling on defendants' motion for summary judgment.  See ECF Nos. 83, 84, 85, 88, 90-93.  Because the court addresses defendants' summary judgment motion herein, the requests will be denied as moot.

////

1

1    II.    MOTION FOR SUMMARY JUDGMENT

2         A.  Defendants' Motion for Summary Judgment

3         Defendants Dr. E. Moghaddam; Registered Nurse ("R.N.") B. Spilman; R.N. V. Relano;

4    R.N. S. Poppachan; R.N. G. Cho; and R.N. C. Lim seek summary judgment on two grounds: (1)

5    plaintiff failed to exhaust all his administrative remedies in compliance with 42 U.S.C. 1997e(a)

6    prior to filing the instant complaint in federal court; and (2) plaintiff's Eighth Amendment

7    deliberate indifference claims are without merit.  Specifically, defendants assert that they

8    provided appropriate, timely treatment to plaintiff's broken finger and that plaintiff's

9    disagreement with defendants' treatment plan is insufficient to establish deliberate indifference to

10   his serious medical needs.  See ECF No. 75 at 9, 21-23.

11        B.  Plaintiff's Opposition

12        In plaintiff's opposition to the motion to dismiss, he argues that he exhausted his claims

13   prior to filing the instant complaint because the failure of officials at California State Prison –

14   Sacramento ("CSP-Sacramento") to timely respond to what he describes as his "emergency"

15   grievances effectively rendered the administrative remedy process unavailable to him.  See ECF

16   No. 78 at 13, 15-18.  With respect to the substantive Eighth Amendment claims, plaintiff

17   contends that contrary to defendants' assertions, he is not disagreeing with how defendants

18   treated his broken finger.[1]  Instead, he takes issue with defendants' failure to follow a course of

19   treatment that called for the administration of effective pain medication.  See id. at 6-21.

20   Defendants' failure, plaintiff asserts, left him with medication that was ineffective in diminishing

21   his pain.  See id. at 7-12, 13-15, 18-22.

22        C.  Defendants' Reply

23        Defendants' reply reprises their failure to exhaust and deliberate indifference arguments.

24   See ECF No. 79 at 1-4.  In addition, defendants argue that plaintiff has failed to admit

25   or deny their undisputed facts, as required by Local Rule 260(b).  Id.

26   ////

27

---

[1] The record indicates that plaintiff broke his finger in a fall off the top bunk in his cell in May
28   2016.  See ECF No. 78 at 7.

2

1          III.   GOVERNING LEGAL STANDARDS

2                 A.   Summary Judgment

3          In general, summary judgment is appropriate when the moving party "shows that there is

4    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5    law." Fed. R. Civ. P. 56(a).  The moving party "initially bears the burden of proving the absence

6    of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387

7    (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party

8    meets its initial responsibility, the burden then shifts to the opposing party to establish that a

9    genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v.

10   Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To meet this burden, the opposing party is

11   required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

12   material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1);

13   Matsushita, 475 U.S. at 586 n.11.

14         The Ninth Circuit has laid out the specific analytical approach to be taken by district

15   courts in assessing the merits of a motion for summary judgment based on the alleged failure of a

16   prisoner to exhaust his administrative remedies:

17                 [T]he defendant's burden is to prove that there was an available
                   administrative remedy, and that the prisoner did not exhaust that
18                 available remedy. . . . Once the defendant has carried that burden, the
                   prisoner has the burden of production. That is, the burden shifts to
19                 the prisoner to come forward with evidence showing that there is
                   something in his particular case that made the existing and generally
20                 available administrative remedies effectively unavailable to him.
                   However, . . . the ultimate burden of proof remains with the
21                 defendant.

22   Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (citation and internal quotations omitted).

23                 B.   The Exhaustion Requirement

24                      1.   Prison Litigation Reform Act

25         Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

26   are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

27   requires prisoners to exhaust available administrative remedies before bringing an action

28   challenging prison conditions under Section 1983.  42 U.S.C. § 1997e(a).  "The PLRA mandates

1    that inmates exhaust all available administrative remedies before filing 'any suit challenging

2    prison conditions,' including, but not limited to, suits under [Section] 1983." Albino, 747 F.3d at

3    1171 (brackets added) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).  "[F]ailure to exhaust

4    is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007).  It is the

5    defendant's burden "to prove that there was an available administrative remedy, and that the

6    prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate

7    of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  The burden then "shifts to the prisoner to

8    come forward with evidence showing that there is something in his particular case that made the

9    existing and generally available administrative remedies unavailable to him." Id.

10       Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a

11    prison's grievance process as long as some remedy remains available.  "The obligation to exhaust

12    'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer

13    the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the

14    grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in

15    original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

16       "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

17    administrative remedies:  An inmate . . . must exhaust available remedies, but need not exhaust

18    unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original).  In discussing

19    availability in Ross, the Supreme Court identified three circumstances in which administrative

20    remedies were unavailable:  (1) where an administrative remedy "operates as a simple dead end"

21    in which officers are "unable or consistently unwilling to provide any relief to aggrieved

22    inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner

23    can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking

24    advantage of a grievance process through machination, misrepresentation, or intimidation." Ross,

25    136 S. Ct. at 1859-60.  "[A]side from [the unavailability] exception, the PLRA's text suggests no

26    limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.' " Id. at

27    1856.  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes,

28    foreclosing judicial discretion." Id. at 1857.

1          2.          California Regulations Governing Exhaustion of Administrative Remedies

2          "The California prison system's requirements 'define the boundaries of proper

3    exhaustion.' " Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S.

4    at 218).  In order to exhaust, the prisoner is required to complete the administrative review

5    process in accordance with all applicable procedural rules.  Woodford, 548 U.S. at 90.  California

6    regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material

7    adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a)

8    (2017).[2]  The appeal process is initiated by the inmate's filing a "Form 602" the "Inmate/Parolee

9    Appeal Form," "to describe the specific issue under appeal and the relief requested."  Id., §

10   3084.2(a).  "The California prison grievance system has three levels of review:  an inmate

11   exhausts administrative remedies by obtaining a decision at each level."  Reyes v. Smith, 810

12   F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011); Harvey v.

13   Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

14         Each prison is required to have an "appeals coordinator" whose job is to "screen all

15   appeals prior to acceptance and assignment for review."  Cal. Code Regs. tit. 15, § 3084.5(b).

16   The appeals coordinator may refuse to accept an appeal and does so either by "rejecting" or

17   "canceling" it.  Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or

18   cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.").

19         "Cancellation" is reserved for those appeals which the inmate cannot simply correct.  For

20   example, an appeal can be cancelled if the action complained of "is not within the jurisdiction" of

21   the CDCR, or if time limits for submitting the appeal have been exceeded.  Id., § 3084.6(c)(1),

22   (4).  Upon "cancellation" of the appeal, the inmate's only recourse, if he still wishes to pursue it,

23   is to show that the reason given for the cancellation was inaccurate or erroneous, or that "new

24   information" now makes it eligible for review.  Id., § 3084.6(a)(3) (cancelled appeal may later be

25   accepted "if a determination is made that cancellation was made in error or new information is

26   received which makes the appeal eligible for further review").

27   ───────────────────────

28   [2]  This series of regulations, which were in effect at the time plaintiff filed the instant complaint, have since been repealed.

5

1    According to the regulations, "a cancellation or rejection decision does not exhaust

2    administrative remedies." Id., § 3084.1(b).  Outside of any exceptions outlined in the regulations,

3    "all appeals are subject to a third level of review, as described in section 3084.7, before

4    administrative remedies are deemed exhausted." Id.

5        IV.    RELEVANT FACTS

6    On May 27, 2016, plaintiff fell from the top bunk in his cell and injured his left hand.  See

7    ECF No. 78 at 7-8.  He then filed a 7362 health care services form requesting treatment for the

8    injury.  See ECF No. 75-1 at 2 (Defendants' Undisputed Facts ("DUF") 5); ECF No. 78 at 7-8.

9    On June 3, 2016, an x-ray taken of plaintiff's hand revealed that he had fractured one of his

10   fingers.  See ECF No. 75-1 at 3 (DUF 10); ECF No. 78 at 8.  The same day, a physician's

11   assistant submitted an urgent request for plaintiff to have an orthopedic surgery consult, and it

12   was approved.  See ECF No. 75-1 at 3 (DUF 10-12).

13   Over the next few months, plaintiff filed multiple 7362 health care forms in which he

14   complained of severe pain and requested medication to address it.  See generally ECF No. 75-1 at

15   2-9 (DUF 5, 13, 17, 20, 31, 34, 48, 53, 57, 60, 66, 70, 73); ECF No. 78 at 6-12, 41-52, 69-71, 77-

16   78, 89-92, 97, 102-104, 121-22, 132-33, 145-46, 161-62).  In addition, plaintiff filed at least four

17   form 602 grievances related to defendants' treatment and care of his hand injury.  See generally

18   ECF No. 75-1 at 11-12 (DUF 89-95), 165; ECF No. 78 at 214-17, 232-36.  Eventually, the pain

19   plaintiff was experiencing was alleviated significantly after he was prescribed Tramadol.  See

20   ECF No. 75-1 at 43; ECF No. 78 at 182-83.

21   The records provided by both plaintiff and defendants demonstrate that between July 31,

22   2016, and December 8, 2016, plaintiff filed several 602 grievances alleging that defendants were

23   not properly treating his hand or managing his related pain.  See ECF No. 75-1 at 11-12 (DUF 89-

24   95), 165; ECF No. 78 at 214-17 (8/15/16 grievance); 233-36 (8/28/16 grievance).  Four of those

25   grievances were fully exhausted at the third level of review.  See ECF No. 75-1 at 11-12 (DUF

26   89-95); 165.  None of them, however, were exhausted prior to plaintiff filing the instant

27   complaint in September 2016.  ECF No. 75-1 at 165 (declaration of C. Henderson, Staff Services

28   Manager II).  At his deposition, plaintiff admitted that he exhausted his administrative remedies

6

1   with respect to his finger injury on March 27, 2017.  See id. at 11 (DUF 89), 40.

2        V.  DISCUSSION

3        A.  Defendants Have Met Their Initial Burden

4       Defendants have met their initial burden of demonstrating that there was an available

5   administrative remedy and that plaintiff did not exhaust that remedy prior to bringing suit.  See

6   Albino, 747 F.3d at 1172.  The administrative appeals system for inmate health care grievances is

7   detailed in the Declaration of C. Henderson, ECF No. 75-1 at 163-166.  The record of grievances

8   submitted by plaintiff at CSP-Sacramento indicates that the administrative process was available

9   to him prior to the of this lawsuit, and that he made use of it.  Specifically, defendants have

10  documented four grievances regarding plaintiff's hand that were initiated prior to this lawsuit:

11  SAC HC 16033098, SAC HC 16033581, SAC HC 16032913 and SAC HC 1602291.  See id. at

12  165.

13      Defendants have also demonstrated that none of the appeals were decided at the third level

14  prior to September 2016 when plaintiff filed the operative complaint.  Id.  Plaintiff does not

15  dispute, but has admitted, that he did not exhaust his administrative remedies until March 2017.

16  See ECF No. 75-1 at 11 (DUF 89); see generally ECF No. 78 (plaintiff's opposition).

17  Accordingly, defendants have met their initial burden under Albino.

18       B.  Plaintiff Has Not Demonstrated the Unavailability of Remedies

19      Plaintiff argues that the grievance process was effectively unavailable to him.  His

20  primary argument is that he should be excused from exhaustion because prison officials did not

21  timely respond to the emergency grievances that he filed in compliance with California Code of

22  Regulations Title 15, §§ 3084.5, 3084.8 & 3084.9.  See ECF No. 78 at 13.  This argument fails

23  because the evidentiary record clearly establishes that plaintiff's grievances were not entitled to

24  expedited processing as emergency grievances.

25      Section 3084.9 of Title 15 of the California Code of Regulations governed emergency

26  appeals in California prisons at the relevant time.[3]  The statute defined the circumstances which

27

28  [3]  Section 3084.9 has since been repealed.

1   warranted quicker processing of a grievance as an emergency appeal.  Those circumstances

2   included but were not limited to: (1) the threat of death or injury due to enemies or other

3   placement concerns, and (2) serious and imminent threat to health and safety.  Cal. Code Regs.

4   tit.15, § 3084.9(a)(1)(A)-(B).  Under such circumstances, appeals could be submitted directly to

5   an appeals coordinator.  The first level of review would be waived, and the second level of review

6   completed within five working days.  See id. § 3084.9(a)(2), (4).

7          The circumstances of plaintiff's grievances did not bring them within the scope of this

8   statute.  Plaintiff broke a finger on his left hand in May 2016.  See ECF No. 75-1 at 2-3 (DUF 5,

9   9-10).  In June 2016, he had surgery to repair the break.  Id. at 6 (DUF 43).  Between June and

10  August 2016, plaintiff filed multiple grievances about the pain he was experiencing and about

11  defendants' failure to treat it with the proper medication.  Id. at 3-9 (DUF 13-73).  However, the

12  evidentiary record demonstrates that during this period plaintiff was regularly seen by medical

13  staff and given pain medication, and the condition of his hand was consistently monitored, which

14  indicates that plaintiff's pain and the healing progress of his hand were being addressed by prison

15  staff.  See id. (DUF 13-73).

16         For example, in June 2016, prior to surgery on his hand, plaintiff was observed by a

17  treating nurse not wearing his hand splint and appearing to be in better spirits.  See ECF No. 75-1

18  at 4 (DUF 23).  That same month, when plaintiff stated that he needed to have surgery on his

19  hand, an appointment was scheduled for him; he was seen the next day by defendant

20  Moghaddam, and the surgery was approved a few days later.  Id. at 5 (DUF 26-28).  In addition,

21  during that period, plaintiff's pain medications consisted primarily of Tylenol with codeine

22  instead of more potent drugs.  See id. at 3-11 (DUF 15, 19, 22, 29, 32, 44).  When the Tylenol

23  stopped being as effective, defendant Moghaddam then prescribed plaintiff Tramadol.  Id. at 10-

24  11 (DUF 82-83).

25         Finally, plaintiff's statement to his mental health provider in July 2016 prior to surgery

26  that his hand felt better (ECF No. 75-1 at 6 (DUF 39)), as well as his statement to his mental

27  health provider in August 2016 post-surgery that his hand was feeling better (id. at 10 (DUF 79))

28  further supports a finding that the condition of plaintiff's left hand and any related pain prior to

8

1 September 2016 did not pose a "serious and imminent threat" to his health.  See Cal. Code Regs.

2 tit.15, § 3084.9(a)(1)(B).  Accordingly, plaintiff's grievances filed between June and August 2016

3 did not warrant being classification as "emergency appeals" that were entitled to expedited

4 consideration.

5      Moreover, even the wrongful failure to classify an inmate appeal as an emergency appeal

6 does not necessarily render the administrative remedy process unavailable to a claimant.  See

7 Hicks v. Kernan, No. C 16-0738 CRB, 2017 WL 2224829, at *5 (N.D. Cal. May 22, 2017) (even

8 if appeal should have been deemed emergency rather than non-emergency, the determination did

9 not prevent plaintiff from properly exhausting through third level of review).  The U.S. Supreme

10 Court has limited the circumstances in which administrative remedies may be deemed effectively

11 unavailable to an inmate.  In Ross, supra, the Court identified only three circumstances in which

12 extant administrative remedies may be considered nonetheless unavailable: (1) where the remedy

13 operates as dead end in which officers are unable or consistently unwilling to provide any relief to

14 aggrieved inmates; (2) where an administrative scheme is so byzantine that no ordinary prisoner

15 could navigate it; (3) where prison administrators use machination, misrepresentation, or

16 intimidation to prevent inmates from accessing it.  Ross, 578 U.S. at 643-44.  There is no

17 evidence in this case to support any of these exceptions to exhaustion.  To the contrary, plaintiff's

18 ability to access and belatedly complete the administrative process demonstrates its effective

19 availability.

20      This court is without authority to grant exceptions to the exhaustion requirement outside

21 the limited circumstances identified by the Supreme Court.  Id. at 639.  Although plaintiff's

22 ongoing discomfort and concern about his hand undoubtedly felt urgent to him, the law is clear

23 that a civil lawsuit commenced prior to the exhaustion of administrative remedies may not go

24 forward.

25     VI.   CONCLUSION

26      Because defendants have met their initial burden under Albino and plaintiff has not

27 established that remedies were unavailable to him, the undersigned concludes that defendant is

28 entitled to summary judgment on the issue of administrative exhaustion.

9

1    Accordingly, IT IS HEREBY ORDERED that plaintiff's requests for ruling (ECF No. 83,

2  84, 85, 88, 90-93) be DENIED as moot.

3    IT IS FURTHER RECOMMENDED that:

4    1.  Defendants' motion for summary judgment (ECF No. 75) be GRANTED;

5    2.  This case be CLOSED.

6    These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8  after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

11  objections shall be served and filed within fourteen days after service of the objections.  The

12  parties are advised that failure to file objections within the specified time may waive the right to

13  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: August 7, 2023

15

16  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28