UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GADDY,<br><br>       plaintiff,<br><br>     v.<br><br>E. MOGHADDAM, et al.<br><br>       defendants. | No.  2:16-cv-2269 TLN AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983, alleging he received ineffective pain medication after he broke his finger in a fall off the top bunk of his cell in May 2016.  Defendants have filed a motion for summary judgment. ECF No. 75.  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 following remand from the Ninth Circuit Court of Appeals in August 2025. ECF Nos. 103-104.  For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 75) be granted, and this action be dismissed with prejudice.

I.     PROCEDURAL HISTORY

Plaintiff is a California inmate under the authority of the California Department of Corrections and Rehabilitation ("CDCR").  He filed his civil rights complaint in September 2016 challenging medical care he received while incarcerated at the California State Prison-Sacramento ("CSP-Sacramento").  ECF No. 1.  On screening pursuant to 28 U.S.C. § 1915A(a), the court

1

found that plaintiff's first three claims alleging deliberate indifference to plaintiff's pain resulting from his broken finger by defendants Dr. E. Moghaddam, Registered Nurse ("R.N.") B. Spilman, R.N. V. Relano, R.N. S. Poppachan, R.N. G. Cho, and R.N. C. Lim were adequate for service.[1] ECF No. 24.  Rather than amend his complaint to cure other deficiencies identified by the court, plaintiff elected to proceed against these six defendants.  ECF Nos. 27-28.

Following a lengthy period of discovery and the court's resolution of several discovery disputes between the parties (ECF Nos. 38-74), defendants filed the instant motion for summary judgment (ECF No. 75).  By Order and Findings and Recommendations ("F&R") dated August 7, 2023, the undersigned found that defendants were entitled to summary judgment based on plaintiff's failure to administratively exhaust his claims before initiating his federal civil rights action.  ECF No. 94.  The F&R was adopted in full (ECF No. 98), and plaintiff appealed to the Ninth Circuit Court of Appeals (ECF No. 100).

On July 17, 2025, in an unpublished decision, the Court of Appeals vacated the decision and remanded for further proceedings.  ECF No. 103.  Reviewing the record de novo, the court found that "the record shows that Gaddy initiated relevant grievances on June 8 and July 31, but defendants failed to notify Gaddy that the grievances were not being processed as emergencies and then failed to respond to either of these grievances by the non-emergency deadlines."  Id. at 2 (citing Cal. Code Regs. tit. 15 §§ 3084.5(b)(2), 3084.8(c)(1)-(3)).  The court remanded for the district court to consider these grievances and "whether the prison's failure to respond to Gaddy's pending grievances by the deadlines set forth in the governing regulations rendered administrative remedies effectively unavailable to Gaddy."  Id. at 2-3 (citing Fordley v. Lizarraga, 18 F.3d 344, 355 (9th Cir. 2021); Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017)).

The court provided both parties with an opportunity to file supplemental briefing regarding the availability of administrative remedies with respect to plaintiff's June 8 and July 31 grievances.  ECF No. 106.  Defendants filed a supplemental brief on October 30, 2025 (ECF No. 107), and plaintiff filed a supplemental brief on December 9, 2025 (ECF No. 110).

---

[1] Plaintiff's first claim concerns Dr. Moghaddam, his second claim concerns R.N. Spilman, and his third claim concerns R.N.s Relano, Poppachan, Cho, and Lim.

II.   MOTION FOR SUMMARY JUDGMENT

A.   Defendants' Motion for Summary Judgment and Supplemental Briefing

Defendants Dr. E. Moghaddam, R.N. B. Spilman, R.N. V. Relano, R.N. S. Poppachan, R.N. G. Cho, and R.N. C. Lim seek summary judgment on two grounds: (1) plaintiff failed to exhaust all his administrative remedies in compliance with 42 U.S.C. 1997e(a) prior to filing the instant complaint in federal court; and (2) plaintiff's Eighth Amendment deliberate indifference claims are without merit.  Specifically, defendants assert that they provided appropriate, timely treatment to plaintiff's broken finger and that plaintiff's disagreement with defendants' treatment plan is insufficient to establish deliberate indifference to his serious medical needs.[2]  See ECF No. 75 at 9, 21-23.

In their supplemental brief following remand by the Court of Appeals, defendants contend that plaintiff initiated an inmate grievance for health care services (Appeal No. 16001678) arising out of a claim of ineffective pain medication on June 8, 2016.  See ECF No. 107 at 2; ECF No. 75-1 at 11 (Defendants' Undisputed Facts ("DUF") No. 90).  Plaintiff initiated a similar inmate grievance (Appeal No. 16032913) on July 31, 2016.  See ECF No. 107 at 2; ECF No. 75-1 at 11 (DUF No. 92).  Defendants allege that both grievances were exhausted at the Third Level on March 23, 2017.  See ECF No. 107 at 2; ECF No. 75-1 at 11-12 (DUF Nos. 89, 91, 93).  Defendants contend that because plaintiff's grievances ultimately received consideration at three levels of appeal, the grievance process was "available" to him and not a "dead end."  ECF No. 107 at 4 (citing Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005)).  Defendants further argue that although plaintiff categorized his grievances as an "emergency" which would allow him to skip the first level of review, "the record does not support a finding that Plaintiff was entitled to the grievance accelerated process."  Id. at 107.  Notably, however, defendants do not address the Ninth Circuit's finding that defendants failed to notify Gaddy that his grievances were not being processed as emergencies and failed to respond to either of these grievances by the non-

---

[2]  In their reply brief, defendants reprise their exhaustion arguments and point out that plaintiff failed to admit or deny their undisputed facts, as required by Local Rule 260(b).  ECF No. 79 at 1-4.

emergency deadlines as required by the governing regulations.  See ECF No. 107 at 5-6; ECF No. 103 at 2 (citing Cal. Code Regs. tit. 15 §§ 3084.5(b)(2), 3084.8(c)(1)-(3)).  Rather, defendants simply maintain that plaintiff did not properly exhaust before filing his civil rights complaint because his appeals of these two grievances were not yet exhausted at the Third Level until March 23, 2017.  See ECF No. 107 at 5 (citing DUF Nos. 91, 93).

                B.  Plaintiff's Opposition

In opposition to defendants' motion for summary judgment, plaintiff argues that CSP-Sacramento officials failed to timely respond to his emergency grievances, rendering the administrative remedy process unavailable to him.  See ECF No. 78 at 13, 15-18.  With respect to his Eighth Amendment claims, plaintiff contends that his deliberate indifference claim is based on defendants' failure to follow a course of treatment that called for the administration of effective pain medication until he was finally prescribed tramadol in August 2016.  See id. at 6-21.  Plaintiff asserts that defendants effectively ignored his continued reports that the medication he was receiving was ineffective in diminishing his pain from his May 2016 injury until August 2016, when plaintiff received the tramadol.  See id. at 7-12, 13-15, 18-22, 180-83.

In his supplemental brief, plaintiff contends that defendants "still did not address how administrative remedies were made 'available' to Plaintiff after Plaintiff submitted his June 8 and July 31 grievances."  ECF No. 110 at 1.  Plaintiff argues that "defendants obstructed his attempt to exhaust by not processing plaintiff's emergency grievances (June 8th and July 31st) in a timely fashion as CDCR grievance regulations direct."  Id. at 2.  Defendants not only failed to properly process his grievances on an expedited basis as emergency grievances, but failed to timely process them as regular grievances, ignoring them "altogether without notifying plaintiff" for 83 days after filing.  Id.  Because his grievances concerned the lack of effective pain medication to treat his metacarpal fracture, plaintiff contends they sufficed to exhaust his Eighth Amendment claim by alerting defendants to the nature of the wrong for which redress was being sought.  Id. at 3-4 (citing Andres, 867 F.3d at 1078-79 (holding that defendants' repeated failure to meet the statutorily required deadlines and provide proper notice made administrative remedies effectively unavailable)).

III.   GOVERNING LEGAL STANDARDS

A.   Summary Judgment

In general, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To meet this burden, the opposing party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

The Ninth Circuit has laid out the specific analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies:

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (citation and internal quotations omitted).

B.   The Exhaustion Requirement

1.   Prison Litigation Reform Act

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA requires prisoners to exhaust available administrative remedies before bringing an action challenging prison conditions under Section 1983.  42 U.S.C. § 1997e(a).  "The PLRA mandates

5

that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under [Section] 1983." Albino, 747 F.3d at 1171 (brackets added) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)). "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731 (2001)).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original). In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" Id. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

6

2.    California Regulations Governing Exhaustion of Administrative Remedies

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. California regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017).[3] The regulations in effect when plaintiff filed his appeals required inmates to use Form 602 and established a three-level review process that inmates initiated by filing grievances with the prison's appeals coordinator. Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.7.[4]

A prison's appeals coordinator must "screen all appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may refuse to accept an appeal and does so either by "rejecting" or "canceling" it. Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator."). "Cancellation" is reserved for those appeals which the inmate cannot simply correct. For example, an appeal can be cancelled if the action complained of "is not within the jurisdiction" of the CDCR, or if time limits for submitting the appeal have been exceeded. Id., § 3084.6(c)(1), (4).[5] According to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies." Id., § 3084.1(b). Outside of any exceptions outlined in the regulations, "all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted." Id.

---

[3] This series of regulations, which were in effect at the time plaintiff filed the instant complaint, have since been repealed.

[4] A copy of the regulations in effect at the time are also included as an exhibit to plaintiff's March 29, 2021 opposition brief. See ECF No. 78 at 226-31.

[5] Upon "cancellation" of the appeal, the inmate's only recourse, if he still wishes to pursue it, is to show that the reason given for the cancellation was inaccurate or erroneous, or that "new information" now makes it eligible for review. Id., § 3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

7

Relevant to the instant case, the regulations required inmates to submit their grievances within thirty calendar days of "[t]he occurrence of the event or decision being appealed." Id., § 3084.8(b)(1). The operative regulations generally required the prison to respond to grievances within thirty working days. See id., §§ 3084.7(h), 3084.8(c)(1)–(3). Inmates dissatisfied with the prison's first-level review were allowed to appeal to a second level, § 3084.7(b), and then to a third-level review conducted under the Appeals Chief's supervision, §§ 3084.7(d)(3), 3084.8(c)(3). Prison administrators were allowed thirty working days to respond to second-level grievances and sixty working days to conduct third-level reviews. Id., § 3084.8(c).[6]

The regulations called for much more expedited review of emergency grievances which raised "serious and imminent threat[s] to health or safety," such that "the regular appeal time limits would subject the inmate . . . to a substantial risk of personal injury or cause other serious and irreparable harm." Id., § 3084.9(a)(1). The regulations required emergency grievances to be sent directly to the second level, where prison administrators were allotted just five working days to respond. Id., § 3084.9(a)(4). If a grievance was "received as an emergency" but prison officials later determined that it did not meet the emergency criteria, § 3084.5(b)(2) required the prison to notify the inmate that the grievance would not be treated as an emergency and provide notice whether the grievance was accepted for regular processing or rejected for the specific reason(s) cited. Id., § 3084.5(b)(2).

IV.   RELEVANT FACTS AND EVIDENTIARY ISSUES

On May 27, 2016, plaintiff fell from the top bunk in his cell and injured his left hand. See ECF No. 78 at 7-8. He then filed a form 7362 Health Care Services Request Form ("7362") requesting treatment for the injury. See ECF No. 75-1 at 2 (DUF No. 5); ECF No. 78 at 7-8. On June 3, 2016, an x-ray of plaintiff's hand revealed that he had fractured one of his fingers. See id. at 3 (DUF No. 10); ECF No. 78 at 8. The same day, a physician's assistant submitted an urgent request for plaintiff to have an orthopedic surgery consult, which was approved. See ECF No. 75-1 at 3 (DUF Nos. 10-12). Over the next few months, plaintiff filed multiple 7362 forms in

---

[6] The operative regulations also allowed prisons the discretion to dismiss inmates' grievances if the inmates failed to comply with any of their filing deadlines. Id., § 3084.6(c)(4).

8

which he complained of severe pain and requested medication to address it.  See generally ECF No. 75-1 at 2-9 (DUF Nos. 5, 13, 17, 20, 31, 34, 48, 53, 57, 60, 66, 70, 73); ECF No. 78 at 6-12, 41-52, 69-71, 77-78, 89-92, 97, 102-104, 121-22, 132-33, 145-46, 161-62).

Although it is not entirely clear from the parties' submissions, it appears undisputed that between June 8, 2016 and December 8, 2016, plaintiff filed at least four CDCR 602 grievances alleging that defendants were not properly treating his fractured finger and/or managing his associated pain.  See ECF No. 75-1 at 11-12 (DUF Nos. 89-95), 165 (Henderson Decl. at ¶ 8); ECF No. 78 at 213-17 (plaintiff's 8/15/16 grievance he labeled an "Emergency"); 233-36 (plaintiff's 8/28/16 grievance).  In their statement of undisputed facts, defendants acknowledge that plaintiff filed grievances alleging ineffective pain medication on June 8, 2016, July 31, 2016, and August 16, 2016.  See ECF No. 75-1 at 11-12 (DUF Nos. 90, 92, 94) (referencing Appeal No. 16001678 dated June 8, 2016, Appeal No. 16032913 dated July 31, 2016, and Appeal No. 16032991 dated August 15, 2016).  Furthermore, California Correctional Health Care Services ("CCHCR") Policy and Risk Management Staff Services Manager C. Henderson submitted a declaration noting that plaintiff filed grievances relating to his hand injury on July 31, 2016, August 15, 2016, August 28, 2016, and December 8, 2016, all of which were exhausted at the third level in either March or July 2017.  See ECF No. 75-1 at 165 (Henderson Decl. at ¶ 8).  Henderson's declaration did not, however, make any reference to plaintiff's earlier June 8, 2016 grievance, Appeal No. 16001678.[7]  Id.

Notably absent from the record are copies of plaintiff's June 8, 2016 and July 31, 2016 grievances, along with the corresponding CDCR responses and decision dates for each level of review.  See e.g., ECF No. 1 at 18 (plaintiff's allegation that he filed an emergency inmate medical grievance relating to his treatment and pain on June 9, 2016[8]); ECF No. 75-1 at 11-12 (DUF Nos. 90, 92, 94) (defendants' acknowledgment of plaintiff's Appeal No. 16001678 on June

[7]  In his declaration, Henderson also references an Exhibit A to his declaration which showed plaintiff's Health Care Appeals and Risk Tracking System (HCARTS) appeal/grievance history. However, no such exhibit to Henderson's declaration was provided by defendants.  See ECF No. 75-1 at 165 (Henderson Decl. at ¶ 8).

[8]  The court presumes that plaintiff was referencing his Appeal No. 16001678, which defendants identified as being filed on June 8, 2018.  See ECF No. 75-1 at 11 (DUF No. 90).

8, 2016, Appeal No. 16032913 on July 31, 2016, and Appeal No. 16032991 on August 15, 2016). In addition, neither party provided this information in their supplemental briefing following the Ninth Circuit's remand based on concerns relating to CDCR's timely processing of plaintiff's June 8, 2016 and July 31, 2016 grievances. See ECF Nos. 103, 107, 110.

Based on plaintiff's two grievances that are in the record before the court, dated August 15, 2016 and August 28, 2016, plaintiff was consistently complaining that the pain medication he was receiving from his treating providers was ineffective in managing his pain. ECF No. 78 at 215-16. In his August 28, 2016 grievance, he further stated, "I've filed several medical appeals which have been emergency and dealt with me being in extreme pain and suffering. These appeals aren't being responded to[,] addressed[,] or sent back to proceed to the next level. This has prevented me from receiving the relief I may be able receive and have hindered my access to exhausting my administrative remedies medical appeals." ECF No. 78 at 233.

Although plaintiff's grievances did ultimately proceed through three levels of review, plaintiff did not receive finals decision on his June 8, July 31, August 15, and August 28 appeals until March and July 2017. See ECF No. 75-1 at 11-12 (DUF Nos. 89-95), 40, 165. Plaintiff asserts that his pain was only alleviated after he was prescribed tramadol in mid-August 2016. See ECF No. 75-1 at 43; ECF No. 78 at 182-83.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. Defendants Have Not Met Their Burden of Establishing an Available Remedy

Where no administrative relief is available to an inmate, requiring exhaustion contradicts the PLRA's purpose and it is not required. See Andres, 867 F.3d at 1079. As noted above, it is defendants' burden to show that an administrative process was available which plaintiff failed to exhaust. Fordley, 18 F.4th at 350-51 (citing Albino, 747 F.3d at 1172). Once defendant shows that a remedy was generally available, the burden shifts to the inmate to show that something in his particular case made the generally available administrative remedies effectively unavailable to him. Id. Because the failure to exhaust is an affirmative defense that defendants must plead and prove, the ultimate burden remains with the defendants. Id.

////

As noted above, the Ninth Circuit has recognized that some circumstances render administrative remedies unavailable even though the process exists on the books.  Relevant here, "[e]very circuit to have considered the issue has agreed that a prison's failure to respond [to an inmate's grievance] renders an administrative remedy unavailable." Fordley, 18 F.4th at 355.  In Andres, the court held that where inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to timely process the grievance, the exhaustion requirement has been satisfied.  Andres, 867 F.3d at 1078-79.  In that case, an inmate filed suit after he had submitted a first-level grievance but received no response for six months. Id. at 1077-78.  The Ninth Circuit held that the grievance process was effectively unavailable because the prison's failure to respond for six months thwarted the inmate from taking advantage of the grievance system.  Id. at 1079.

In Fordley, 18 F.4th at 355, the Ninth Circuit considered whether a prison's failure to substantively respond to a prisoner's March 2016 grievance rendered the generally available administrative remedies effectively unavailable.  In that case, the prison acknowledged receipt of the inmate's March 2016 grievance but failed to assign a log number for tracking purposes or ever substantively respond to it.  Id. at 354.  The court held that the grievance should have been treated as an emergency and therefore second-level review process should have been completed within five working days.  Id.  Moreover, "the fact the March grievance is missing must be attributed to a failure of the prison's grievance processing system."  Id.[9]  Finally, the court observed that the response times in the California regulations for emergency grievances were not flexible, as they prohibited prison officials from obtaining extensions of time to respond.  See Cal. Code Regs. tit. 15, § 3084.8(c), (f).  And even if defendants were entitled to thirty working days to respond if the grievance was not an emergency, they equally failed to meet this deadline. Id. at 358.  Accordingly, the prison's "failure to respond to Fordley's emergency grievance over the course of several months rendered Fordley's administrative remedies unavailable."  Id.

---

[9]  The court also rejected the prison officials' argument that an inmate's reassertion of a concern in a subsequent grievance —especially a request for a response to an ignored emergency grievance—somehow operates to unexhaust a previously exhausted claim.  Id. at 356.

11

Defendants' attempts to distinguish Fordley from this case, ECF No. 107 at 5, are unpersuasive. Defendants contend that unlike the circumstances in Fordley, plaintiff's allegations of inadequately managed pain from his broken finger did not satisfy the statutory criteria that would have entitled him to expedited processing of "emergency" grievances.[10] Id. This may be correct; however, defendants have neither provided a copy of plaintiff's June 8, 2016 or July 31, 2016 grievances to support such a finding, nor demonstrated that they provided plaintiff with timely responses within the time periods defined by § 3084.8(c) for non-emergencies. See Cal. Code Regs. tit.15 § 3084.8(c)(1)–(3). As noted above, prison administrators were allowed thirty working days to respond to first and second-level grievances and sixty working days to conduct third-level reviews. But defendants did not provide a first-level response to plaintiff's August 15, 2016 grievance until October 20, 2016 (nearly 60 days), and plaintiff did not receive a third-level response for approximately 90 days. ECF No. 78 at 213-16. More egregiously, defendants did not provide a first-level response to plaintiff's August 28, 2016 grievance until March 17, 2017 (nearly seven months), and the third-level of review once again took approximately 90 days. ECF No. 78 at 232-36.

Defendants have not pointed to any evidence in the record, and the court is aware of none, demonstrating that their processing of plaintiff's grievances was timely under § 3084.8(c)(1)–(3). Nor do defendants claim to have provided plaintiff with the written notice as required by § 3084.8.5(b)(2) that his "emergency" grievances were determined not to meet the emergency criteria and would therefore be processed pursuant to the standard timelines. In fact, defendants do not acknowledge this regulatory requirement at all.

Accordingly, regardless of whether plaintiff's grievances were entitled to expedited processing as "emergency" grievances or he was still attempting to utilize the grievance process when he filed his civil rights complaint, defendants have not met their burden of establishing the availability of an administrative remedy at the time plaintiff filed suit under controlling Ninth

---

[10] As discussed above, section 3084.9 of Title 15 of the California Code of Regulations defined the circumstances which warranted quicker processing of a grievance as an emergency appeal as including (1) the threat of death or injury due to enemies or other placement concerns, and (2) serious and imminent threat to health and safety. Cal. Code Regs. tit.15, § 3084.9(a)(1)(A)-(B).

Circuit precedent including <u>Fordley</u>, <u>Andres</u>, and <u>Albino</u>.  As the Ninth Circuit held in <u>Fordley</u>, "by any measure, the prison's failure to respond . . . over the course of several months rendered [the inmate's] administrative remedies unavailable."  <u>Fordley</u>, 18 F.3d at 358.  This appears to have been the case here as well.  Summary judgment is therefore not warranted on grounds of non-exhaustion, and the court will accordingly turn to the merits of plaintiff's deliberate indifference claims.

> VI.    PLAINTIFF'S EIGHTH AMENDMENT CLAIM THAT DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS

A. <u>Evidentiary Issues</u>

At the outset, the court notes that plaintiff has failed to file a separate document in response to defendants' statement of undisputed facts (ECF No. 75-1) that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).[11]  The facts are therefore deemed undisputed except as otherwise discussed.  Additional facts have been taken from plaintiff's verified filings as appropriate.

"Pro se litigants must follow the same rules of procedure that govern other litigants."  <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps ... detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."  <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  <u>Id.</u> (citation omitted).

---

[11]  Defendants' DUF includes 95 undisputed facts (ECF No. 75-1 at 1-12), which the court will not re-produce here although they are referenced in the analysis of plaintiff's claims below.

Accordingly, given plaintiff's status as a pro se prisoner, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in plaintiff's complaint (ECF No. 1) or his opposition brief (ECF No. 78) which have evidentiary support in the record will be considered.

B. <u>Legal Standards for Deliberate Indifference Claim</u>

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Id.</u> (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." <u>McGuckin</u>, 974 F.2d at 1059-60 (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir. 1990); <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200-01 (9th Cir. 1989)), overruled on other grounds by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

"While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." <u>Wood</u>, 900 F.2d at 1334.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 & n.5 (1994).  It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 843 n.8.  Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u> at 837.

14

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

C. Claim One - Dr. Eilya Moghaddam

In his deposition and opposition brief, plaintiff confirmed that he does not challenge the adequacy of medical care he received for his broken finger during his incarceration except for the adequacy of the pain medication provided to him by defendants between his injury on May 27, 2016 and August 22, 2016, when Dr. Moghaddam prescribed tramadol. ECF No. 78 at 18-22; ECF No. 75-1 at 43. As noted above, to overcome defendants' motion for summary judgment, plaintiff must identify evidence sufficient to create a triable issue as to whether that the defendants' treatment recommendations were made with deliberate indifference to his "serious medical needs," such as a purposeful act or failure to respond to his pain. See McGuckin, 974 F.2d at 1060.

In his first claim, plaintiff alleges that Dr. Moghaddam acted with deliberate indifference to his serious medical needs by continuing to prescribe Tylenol #3 rather than alternative pain medication despite plaintiff's continued complaints of pain in 7362 forms submitted to medical staff. ECF No. 1 at 5-11. Specifically, plaintiff faults Dr. Moghaddam for not prescribing tramadol until after plaintiff reported constant pain and post-surgical numbness to his orthopedic surgeon in August 2016. Id. at 10. Plaintiff alleged that "grossly inadequate care" provided by Dr. Moghaddam caused him to needlessly suffer for two months and amounted to deliberate indifference. Id. at 11. See also ECF No. 78 at 18-20.

The undisputed facts in the record, however, demonstrate that when Dr. Moghaddam was

15

made aware of plaintiff's complaint that his pain was not adequately controlled, he did prescribe different medication to provide plaintiff additional pain relief. Dr. Moghaddam was first advised of plaintiff's broken finger on June 6, 2016, when he reviewed an x-ray ordered by PA Bodenhamer and ordered Tylenol and Motrin to manage plaintiff's pain. ECF No. 75-1 at 3-4 (DUF Nos. 15-16). Plaintiff declined the Motrin prescription, opting to only take the Tylenol. Id. at 3 (DUF No. 15). When plaintiff submitted 7362's complaining of hand pain on June 7 and asked RN Spilman for "better pain control," RN Spilman contacted Dr. Moghaddam with plaintiff's request. Id. at 4 (DUF Nos. 18-19). Dr. Moghaddam ordered the prescription pain medication Tylenol #3, which is Tylenol with codeine. Id. (DUF No. 19).

The day after plaintiff's orthopedic surgery consult with Dr. Ibrahim at San Joaquin General Hospital, Dr. Moghaddam promptly submitted an urgent Request for Services ("RFS") for the recommended surgical procedure for plaintiff's fractured finger. Id. at 5 (DUF No. 27). The RFS for surgery was approved on June 20, 2016. Id. (DUF No. 28). When plaintiff met with Dr. Moghaddam for a follow up on June 20, 2016, plaintiff did not report that Tylenol #3 was not managing his pain effectively or request any change to his pain management. Instead, he "asks for some meds for Tylenol #3 side effects, nausea. No other issues." Id. (DUF No. 29). Dr. Moghaddam prescribed Zofran for nausea. Id. (DUF No. 30). After plaintiff reported hand pain in 7362s submitted on June 22 and 24, 2016, RN Spilman contacted Dr. Moghaddam, who reordered Tylenol #3. Id. (DUF Nos. 31-32).

When plaintiff submitted a 7362 complaining that he was requiring excessive amounts of Tylenol, which was upsetting his stomach, plaintiff was seen by RN Spilman on July 5, 2016. Id. (DUF No. 35). RN Spilman advised him not to take excessive amounts of Tylenol due to the risk of severe liver damage, but plaintiff also declined other offered pain medication. Id. (DUF NO. 35). After plaintiff's surgery date was extended by the hospital, Dr. Moghaddam reordered preoperative lab work for plaintiff on July 11, 2016 with the notation, "Surgery date moved out, per hospital need labs drawn again." Id. at 6 (DUF No. 38). That same date, plaintiff reported to his mental health provider that "my hand feels better. I still have to have an operation on it at some point. I am good." Id. (DUF No. 39).

Dr. Moghaddam examined plaintiff on July 18, 2016, and also confirmed the July 21, 2016 date for plaintiff's upcoming surgery. Id. (DUF Nos. 40-41). During this appointment, plaintiff did not ask Dr. Moghaddam to make any change to his pain management regimen. Id. (DUF No. 42). When plaintiff returned to the prison following his July 21, 2016 surgery with Dr. Ibrahim, Dr. Moghaddam prescribed Tylenol #3. Id. (DUF Nos. 43-44). Dr. Moghaddam conducted a follow up appointment with plaintiff on July 25, 2016, and noted no signs of surgical infection. Id. (DUF No. 46). Dr. Moghaddam noted his plan to continue prescribing Tylenol #3 as needed for pain, medications for constipation, and dressing changes per the surgical recommendations. Id. at 7 (DUF No. 46). Once again, during his post-surgical appointment with Dr. Moghaddam, plaintiff did not request any changes in his pain management. Id. at 7 (DUF No. 47).

Dr. Moghaddam conducted another post-surgical examination of plaintiff on August 1, 2016, noting plaintiff's new complaint that he had not consented to the surgery. Id. (DUF No. 55). Plaintiff was continuing to receive Tylenol for pain. Id. at 8 (DUF No. 58). When Dr. Moghaddam examined plaintiff again on August 22, 2016, he noted that during this visit, plaintiff "asks for Tramadol. [Plaintiff reported] [i]t helped me before. Tylenol #3 does not work. Ibuprofen does not work." Id. at 8 (DUF No. 82). This was the first time that plaintiff ever made such a request directly to Dr. Moghaddam, and he prescribed tramadol, as plaintiff requested. Id. (DUF No. 83).[12]

In summary, Dr. Moghaddam treated plaintiff's broken finger on numerous occasions, including examining him before and after his July 21, 2016 surgery, sending prompt requests for treatment by orthopedic specialists, labs, and occupational therapy, and prescribing pain and other medications to help keep plaintiff comfortable.[13] Id. at 5-8 (DUF Nos. 27-30, 33, 38, 40-42, 46,

---

[12] During his deposition, plaintiff confirmed that his deliberate indifference claim concludes when he was prescribed the tramadol in August 2016. ECF No. 75-1 at 8 (DUF No. 84).

[13] Defendants assert – and plaintiff does not dispute – that Dr. Moghaddam downgraded plaintiff's surgery request to "route" from "urgent" only because the hospital moved the surgery date and it became apparent the surgery could not take place within 14 days of Dr. Moghaddam's original order. To the extent plaintiff's complaint states that Dr. Moghaddam "put off any treatment to have it fixed" (ECF No. 1), plaintiff later clarified during his deposition that he is

17

49, 55-56, 58, 80, 81). During plaintiff's in-person appointments with Dr. Moghaddam, plaintiff never reported that the Tylenol #3 was not working or request different pain medication until August 22, 2016, when he asked for tramadol and Dr. Moghaddam prescribed it. Id. at 8 (DUF Nos. 82-83). Although plaintiff may believe that Dr. Moghaddam *should* have been aware of his continued pain complaints made in his 7362 forms and adjusted plaintiff's prescriptions earlier, Dr. Moghaddam neither receives nor responds to submitted 7362 forms, which is a function of nursing staff. Id. at 11 (DUF No. 85). The evidence shows that when Dr. Moghaddam was actually made aware of plaintiff's specific requests for different pain medication on June 3 and August 22, he accommodated plaintiff's requests – switching plaintiff's treatment from Tylenol with Motrin to Tylenol #3 on June 3, 2016, and from Tylenol #3 to tramadol on August 22, 2016. Id. at 4, 11 (DUF Nos. 19, 83).

In support of the motion for summary judgment, defendants have submitted the declaration of Dr. Moghaddam (ECF No. 75-1 at 14-15) as well as Dr. Bennett Feinberg, Chief Medical Consultant for the CCHCS Office of Legal Affairs who has personally supervised the care of hundreds of patients in the correctional care setting (ECF No. 75-1 at 46-55). Dr. Moghaddam asserted that on each occasion when he treated plaintiff, he "listened to his complaints, reviewed his medical records, and based on my training and experience, I provided medical care that I believed was appropriate, including the medications prescribed." Id. at 15. In Dr. Feinberg's expert opinion, Dr. Moghaddam and the medical staff were prompt, responsive, and attentive to plaintiff's medical needs. Id. at 54. Dr. Moghaddam was not deliberately indifferent to plaintiff's pain as he prescribed tramadol to plaintiff the first time that plaintiff "reports to him that the over-the-counter and prescription pain medications he had thus far received were not effective and tramadol had helped him with pain in the past." Id.

On this record, plaintiff has failed to identify evidence that Dr. Moghaddam acted with deliberate indifference to his pain and suffering, as alleged. See ECF No. 78 at 18-20. Plaintiff has not shown that he is competent to provide expert opinions on the standards and

_____

only challenging his pain management. ECF No. 75-1 at 3, 6, 43 (DUF Nos. 11, 36-38).

18

appropriateness of the treatment provided, including pain medication prescribed, and he has offered no other evidence supporting his claims that Dr. Moghaddam's course of treatment disregarded an excessive risk to his health and safety. See ECF No. 75-1 (DUF No. 4). Absent any competent evidence, plaintiff's arguments amount to nothing more than a difference of opinion that cannot support a claim of deliberate indifference. See Toguchi, 391 F.3d at 1058. For these reasons, plaintiff has failed to establish a dispute of fact regarding whether Dr. Moghaddam was deliberately indifferent to his medical needs.

### D. Claim Two – Registered Nurse B. Spilman

Plaintiff's second claim relates to R.N. Bonnie Spilman, who saw plaintiff several times for his complaints of left finger pain between June and August 2016. Plaintiff alleges R.N. Spilman delayed referring him to Dr. Moghaddam for several days after his initial injury and only provided Tylenol for his pain. ECF No. 1 at 12. Even after plaintiff had been prescribed Tylenol #3 by Dr. Moghaddam, plaintiff alleges that R.N. Spilman ignored his continued reports that the Tylenol #3 was ineffective and declined to refer him to Dr. Moghaddam or otherwise "attempt to get me anything that would work." Id. at 13. See also ECF No. 78 at 21.

On Saturday, May 28, 2016, plaintiff submitted a 7362 form stating, "my hand is broken fell from top bunk on it (last Friday) wrist may be mess up the same." ECF No. 75-1 at 48. On Tuesday, May 31, 2016, after the Memorial Day holiday, this 7362 was received by R.N. Spilman. Id. R.N. Spilman examined plaintiff on June 1, 2016, and noted tenderness, deformity, and swelling, with full range of motion of the affected area. Id. at 2, 48 (DUF No. 6). R.N. Spilman asserts in her declaration that she did not have any knowledge of plaintiff's broken finger prior to her June 1st examination. Id. at 18. She wrapped his hand in an Ace wrap, provided the anti-inflammatory pain medication naproxen, and scheduled plaintiff for a primary care provider appointment the following day, June 2, 2016. Id. at 2 (DUF No. 7).

R.N. Spilman next evaluated plaintiff on June 6 and contacted the outside specialty department for an orthopedic referral, as well as Dr. Moghaddam regarding pain management. Id. at 3 (DUF No. 14). When she received additional 7362s from plaintiff reporting hand pain, she evaluated plaintiff on June 7, 2016 and passed along his pain complaints to Dr. Moghaddam,

19

who prescribed Tylenol #3.  Id. at 4 (DUF Nos. 17-19).  Similarly, when plaintiff continued to complain of hand pain in 7362s submitted on June 9 and 10, 2016, R.N. Spilman evaluated him and contacted Dr. Arya, who reordered Tylenol #3.  Id. at 4 (DUF Nos. 21-22).  During that appointment, R.N. Spilman noted that plaintiff was in "better spirits" and not wearing his splint.  Id. at 4 (DUF No. 23).

After plaintiff submitted additional 7362s complaining of hand pain on June 22 and 24, 2016, while awaiting his surgery date, R.N. Spilman once again contacted Dr. Moghaddam, who reordered the Tylenol for pain management.  Id. at 5 (DUF No. 32).  On July 2, 2015, plaintiff complained in a 7362 form that he was requiring excessive amounts of Tylenol, which was upsetting his stomach.  Id. at 5 (DUF No. 34).  On July 5, R.N. Spilman advised plaintiff not to take excessive amounts of Tylenol due to the risk of severe liver damage, and noted that plaintiff declined other pain medications she offered during that appointment.  Id. at 5 (DUF No. 35).  On July 11, 2016, plaintiff reported to his mental health provider that "my hand feels better.  I still have to have an operation on it at some point.  I am good."  Id. at 51.

Following his July 21, 2016 surgery, plaintiff submitted a 7362 form complaining of post-operative symptoms.  R.N. Spilman evaluated plaintiff and then sought clarification from Dr. Moghaddam regarding dressing change orders before making the requested changes to plaintiff's dressings.  Id. at 7 (DUF Nos. 48-49).  In the following weeks, R.N. Spilman removed plaintiff's surgical staples per Dr. Moghaddam's orders, noting plaintiff tolerated the procedure well and "seemed happier."  Id. at 8 (DUF Nos. 57-59).

In support of the motion for summary judgment, defendants have submitted the declaration of R.N. Spilman as well as Dr. Feinberg.  ECF No. 75-1 at 17-18, 47.  R.N. Spilman stated that "on each occasion I saw Gaddy, I listened to his complaints, reviewed his medical records, and based on my training and experience, I provided medical care that I believed was appropriate."  Id. at 18.  Unlike primary care providers, nurses may dispense over-the-counter pain medications, but do not have the ability to order prescription pain medications.  Id. at 11 (DUF No. 86).  Dr. Feinberg further opined that defendants were prompt, responsive, and attentive to plaintiff's medical needs, and that it is not mandatory for nursing staff to refer a

20

patient to a primary care provider after an evaluation, but "rather at their clinical discretion incorporating their training and expertise." Id. at 54.

On this record, plaintiff has failed to identify evidence that R.N. Spilman unreasonably delayed plaintiff's receipt of care or pain medication or acted with deliberate indifference to his pain and suffering. R.N. Spilman was the first provider to evaluate plaintiff following his injury, and there is no evidence that she delayed treatment over the Memorial Day holiday or after learning of his broken finger. In fact, she wrapped his hand, provided anti-inflammatory pain medication, and referred him to a primary care provider the next day. Id. at 2 (DUF No. 7). Similarly, when R.N. Spilman frequently evaluated plaintiff after he submitted 7362 complaints, the record reflects that she used her professional judgment to obtain additional treatment for plaintiff and/or refer him for additional examination with treating providers or outside specialists, as appropriate. As noted above, R.N. Spilman contacted plaintiff's primary care providers about his pain complaints on several occasions, resulting in plaintiff's prescription for Tylenol #3. Id. at 4-5 (DUF Nos. 17-19, 21-22, 32). Contrary to plaintiff's allegations, the evidence in the record reflects that R.N. Spilman took his injury and pain complaints seriously and consistently took steps to address them.

Plaintiff argues that R.N. Spilman should have done more to "refer him to a doctor who could prescribe effective pain medication" (ECF No. 78 at 21), but he has not shown that he is competent to provide expert opinions on the standards and appropriateness of the pain medication prescribed or the timing of his treatment, and he has offered no other evidence supporting his claims. ECF No. 75-1 at 2 (DUF No. 4). Absent any competent evidence, plaintiff's difference of opinion regarding how R.N. Spilman should have performed her duties or coordinated his care with his treating providers cannot support a claim of deliberate indifference. See Toguchi, 391 F.3d at 1058. For these reasons, plaintiff has failed to establish a dispute of fact regarding R.N. Stilman's treatment that would indicate that she was deliberately indifferent to his medical needs.

E.  Claim Three – Registered Nurses V. Relano, S. Poppachan, G. Cho, and C. Lim

Plaintiff's third claim alleges that R.N.s Relano, Poppachan, Cho, and Lim acted with deliberate indifference to his medical needs. Specifically, plaintiff alleges that he told R.N. Lim

21

in early August that the Tylenol #3 he had been prescribed was ineffective in managing his pain, but she ignored his requests and denied his request to see a doctor.  ECF No. 1 at 15.  Plaintiff alleges that he made similar complaints to R.N. Poppachan following his surgery, but she also ignored his requests and advised him to obtain free Motrin from the canteen.  Id. at 16.  When plaintiff was seen by R.N. Cho and Chief Nurse Relano in mid-August 2016, he reported finger numbness and ineffective pain medication.  Id. at 16.  Plaintiff alleges that R.N. Relano and R.N. Cho both ignored his requests for different pain medication and failed to refer him to a doctor to address his pain, which amounted to deliberate indifference.  Id. at 17.  See also ECF No. 78 at 21.

R.N.s Relano, Poppachan, Cho, and Lim all treated plaintiff for his post-surgical complaints in August 2016.  ECF No. 75-1 at 7-10 (DUF Nos. 51, 61-66, 68-75).  R.N. Relano changed plaintiff's dressings on July 28, 2016, and recommended pain medication.  Id. at 7 (DUF Nos. 51-52).  R.N. Lim treated plaintiff for his post-surgical complaints of pain and finger numbness on August 8, 2016, documenting his complaints of tenderness but observing no swelling or redness.  Id. at 8 (DUF Nos. 60-64).  R.N. Lim asked plaintiff what medications had helped him when he was in pain before, and plaintiff responded, "nothing," and that it did not matter to him whether the physicians gave him pain medications because he would keep submitting 7362s.  Id. (DUF No. 62).  R.N. Lim offered plaintiff Tylenol #3, which plaintiff declined, and encouraged plaintiff to follow up with his orthopedic specialist during his upcoming August 18, 2016 appointment.  Id. at 8-9, 29 (DUF No. 64-65).  On August 11 and 12, 2016, R.N. Poppachan and R.N. Cho both observed unremarkable physical examinations and that plaintiff was moving his fingers without any difficulty.  In response to his pain complaints, plaintiff was advised to obtain ibuprofen or naproxen for free from the canteen and encouraged to follow up with his orthopedic surgeon on August 18, 2016, as well as his primary care provider during plaintiff's scheduled appointment that week.  Id. at 9 (DUF Nos. 68-72).  On August 15, 2016, R.N. Poppachan observed some swelling and tenderness on examination, performed a dressing change, and recommended anti-inflammatory pain medication and additional follow up during plaintiff's scheduled appointments with his outside specialist and primary care provider.  Id. at 10

22

(DUF No. 75).  R.N. Poppachan also consulted with Dr. Moghaddam, who elected to pursue the same course of treatment unless a different recommendation was provided by plaintiff's outside orthopedist.  Id. at 22.  During plaintiff's appointment with his mental health provider on August 22, 2016, plaintiff reported that his "hand was feeling better since the surgery."  Id. at 10 (DUF No. 79).

Although plaintiff continued to submit numerous 7362s reporting 9/10 pain following his finger surgery, the evidentiary record demonstrates that during this period plaintiff was regularly seen by R.N.s Relano, Poppachan, Cho, and Lim and the condition and healing of his hand was consistently monitored and addressed.  See id. at 7-10 (DUF Nos. 51, 61-66, 68-75).  Declarations from the defendants reflect that during their post-surgical examinations, plaintiff's reported pain ratings of 9/10 were contradicted by objective findings, including normal blood pressure and temperature, showing that plaintiff was not in acute distress.  Id. at 21-22, 25-26, 28-29.  Under the circumstances, defendants determined that emergency referrals to medical doctors were not warranted because plaintiff's symptoms could be addressed with free anti-inflammatory pain medication and he could directly follow up during his scheduled appointments with his orthopedic specialist and primary care provider.  Notably, when R.N. Lim also offered plaintiff stronger pain medication, plaintiff declined.  Id. at 8 (DUF No. 64).

As noted above, plaintiff has failed to establish that he is competent to provide expert opinions on the standards and appropriateness of the pain medication prescribed, the timing of his treatment, or the clinical discretion exercised by R.N.s Relano, Poppachan, Cho, and Lim. Although plaintiff believes they each should have done more to address his pain complaints following his surgery (ECF No. 78 at 21), plaintiff's difference of opinion does not establish that any of the defendants provided inadequate care or acted with deliberate indifference.  See Toguchi, 391 F.3d at 1058.  It is not mandatory for nursing staff to refer a patient to a primary care provider after an evaluation, and they may exercise their clinical discretion to make such referrals.  ECF No. 75-1 at 54.  Plaintiff also made numerous inconsistent statements regarding the severity of his symptoms or effectiveness of certain pain medications.  For example, contrary to his reports of 9/10 pain, plaintiff told his mental health provider in July 2016 prior to surgery

that his hand felt better (ECF No. 75-1 at 6 (DUF No. 39)), and in August 2016 post-surgery that his hand was feeling better (id. at 10 (DUF No. 79)).  Such statements further support a finding that R.N.s Relano, Poppachan, Cho, and Lim were reasonably exercising their clinical discretion in evaluating plaintiff's condition and providing ongoing post-surgical care.

Accordingly, plaintiff has failed to establish a dispute of fact regarding defendants' treatment plan that would indicate that any of the defendants were deliberately indifferent to his serious medical needs.  Defendants' motion for summary judgment should therefore be granted.

VII.    PLAIN LANGUAGE SUMMARY FOR A PRO SE LITIGANT

It is being recommended that that defendants' motion for **summary judgment** be granted and this case be dismissed because there is no evidence that shows that the care and treatment provided by defendants was medically unacceptable and constituted **deliberate indifference** to your medical needs.

VIII.    CONCLUSION

For the reasons explained more fully above, defendants have not met their burden under governing Ninth Circuit precedent on the issue of administrative exhaustion.  However, the court finds that defendants are entitled to summary judgment on plaintiff's claims that they acted with deliberate indifference to his serious medical needs.  Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 75) be GRANTED; and

2.  This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

////

////

24

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 20, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

25